Nov. Term, 1851.

HOLLIDAY
v.
COE.

## HOLLIDAY *v.* COE.

*A.,* the owner of a flat-boat, undertook with *B.,* for a certain sum, to transport, from *Covington, Indiana,* to *New Orleans, Louisiana,* 3,771 bushels of corn to be delivered at the latter place, without delay, to *C.* or his assigns, in like good order as at the place of shipment, the unavoidable dangers of the river navigation or fire excepted. In pursuance of his undertaking, *A.* proceeded on the voyage with his boat and said cargo, until the boat, when within about 250 miles of *New Orleans,* sunk, and the whole cargo was lost. *Held,* that *A.* could not recover the freight, or any part of it.

*Monday, November 24.*

ERROR to the *Fountain* Circuit Court.

BLACKFORD, J.—This was an action of assumpsit brought by *Coe* against *Holliday.* Plea, the general issue. The cause was submitted to a jury. Verdict for the plaintiff for 222 dollars. Motion for a new trial overruled, and judgment on the verdict.

The declaration, originally, contained six counts. Two of them were adjudged, on general demurrer, to be bad, and need be no further noticed. The remaining counts are general ones for work and labor, and for money paid.

The facts are as follows:

In 1846, the plaintiff, *Coe,* undertook to transport, for *Holliday,* the defendant, a certain quantity of corn from *Fountain* county, in this state, to *New Orleans,* in *Louisiana.* The following bill of lading shows the contract between the parties:

" *Covington, Fountain* county, *Ia., May* 15th, 1846.

Shipped by *Daniel T. Holliday*, in good order and condition, on board the good flat-boat called the *Queen-City*, No. 3, whereof *Milburn Coe* is owner, and *Samuel Welch* is pilot, for the present voyage, now lying in the port of *Covington* and bound for *New Orleans*, the following property marked and consigned as below, which is to be delivered without delay, in like good order, at the port aforesaid, the unavoidable dangers of the river navigation or fire excepted, unto *M. R.* or *A. S. Holliday*, or to his or their assigns, he or they paying freight for the said property at the rate of sixteen cents per bushel.

"In witness whereof, the owner of said boat has affirmed to three bills of lading of this tenor and date, one of which being accomplished, the others to stand void.

"On account of *D. T. Holliday, Covington, Ia.* Property, 3,771 bushels of corn in the ear, at 16 cents, 603 dollars and 36 cents. Consignees, *M. R.* or *A. S. Holliday.*

"Received on the above ft. of *D. T. Holliday,* 75 dollars and 64 cents. (Bal.) 527 dollars and 72 cents. (Signed) *Milburn Coe.*"

The defendant's advance of 75 dollars and 64 cents, mentioned above, was to pay incidental expenses, such as the expense of a protest, should one be necessary. The defendant had the corn insured at 20 cents a bushel.

The plaintiff, in pursuance of his contract contained in the bill of lading, proceeded on the voyage with his boat and the aforesaid cargo, until the boat, when within about 250 miles of *New Orleans*, sunk, and the whole cargo was lost. Immediately after the loss, the plaintiff went to *New Orleans*, and procured, at an expense of about fifteen dollars, a protest of the boat. Afterwards, the defendant told one of the witnesses he would pay the plaintiff a part of the freight, but the plaintiff was not then present, nor did the witness understand the defendant as contracting to make such payment. The insurance on the corn was paid by the insurers.

These facts do not, in our opinion, support the verdict for the plaintiff. The claim of the plaintiff, under the counts for work and labor, is for freight in transporting the corn

under the contract between the parties, as evidenced by the bill of lading. But it is very clear that the plaintiff has no ground for the recovery of freight. The answer to his claim for freight is, that the corn was not delivered by him at *New Orleans ;* his delivery of it there being a precedent condition to be performed by him. The sinking of the boat and consequent loss of the cargo, before the arrival at the place of destination, show that no freight is recoverable in this case. The circumstance that the plaintiff performed a part of the voyage, and that the loss occurred without any fault on his part, does not authorize the verdict. There are no doubt cases where freight must be paid, *pro rata itineris.* Those cases are where the vessel has performed the whole voyage, and brought only a part of her cargo to the place of destination ; or where the vessel has not performed her whole voyage, and the goods have been delivered to the merchant at a place short of the place of delivery. The case before us does not come within either of those classes. Here was an entire loss of the cargo where the boat was sunk, and, of course, the case is not one where freight can be recovered according to the proportion of the voyage performed. 3 Kent's Comm. 219, 227.

There was no evidence to support the count for money paid. It is true that the plaintiff paid a small sum for the protest at *New Orleans*, but the evidence shows that he was bound to pay that out of the money which had been advanced to him, on the freight, by the defendant.

The evidence of the defendant's statement after the loss, that he would pay part of the freight, was made to a stranger, in the plaintiff's absence, and the defendant was not understood as contracting to make such payment. That evidence does not support this suit.

*Per Curiam.*—The judgment is reversed and the verdict set aside with costs. Cause remanded, &c.

*Z. Baird,* for the plaintiff.